IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Thomas J. Wylie, Sr., etc., | Case No. 3:13 CV 2798 |
|                 Plaintiff, | MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT |
| -vs- | JUDGE JACK ZOUHARY |
| Fed Ex Ground Package System, Inc., et al., | |
|                 Defendants. | |

Plaintiff initiated this litigation against FedEx Ground Package System, Inc. ("FedEx") and two of its truck drivers, Van Adams and Jonathan Shoemaker, seeking to recover damages arising out of a motor vehicle accident that resulted in the tragic death of Plaintiff's son, Thomas Wylie, Jr. (Doc. 1). Plaintiff alleges Adams' and Shoemaker's negligent driving proximately caused Wylie's injuries and Plaintiff's damages (Counts I and II), and that FedEx is liable for the negligence of its drivers (Count III). As to all Defendants, Plaintiff also alleges wrongful death pursuant to Ohio Revised Code § 2125.01 (Count IV) and a survivorship claim pursuant to Ohio Revised Code § 2305.21 (Count V). Defendants now move for summary judgment, arguing Plaintiff has not produced evidence that either Adams or Shoemaker were the proximate cause of the accident (Doc. 70).

**BACKGROUND**

The parties agree on the basic facts relating to the vehicle collisions but dispute the cause of the collisions. In the early morning of June 23, 2013, Wylie was driving westbound on Ohio State Route 24 (Doc. 67 at ¶ 2). Adams and Shoemaker were each driving a FedEx semi-tractor pulling double trailers eastbound, with Shoemaker driving behind Adams (Doc. 1 at ¶¶ 12–14; Doc. 67 at ¶ 15). Wylie's truck first collided with Adams' truck and then with Shoemaker's truck (Doc. 1 at ¶ 15).

**STANDARD OF REVIEW**

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute. Rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). But, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Expert Masonry, Inc. v. Boone Cty, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006) (internal quotation marks omitted).

**ANALYSIS**

**Count I: Negligence as to Adams.** The parties dispute the cause of the collision between Wylie's vehicle and Adams' truck and the initial point of impact between those vehicles. Plaintiff argues Adams crossed into the westbound lane and collided with Wylie's vehicle; Defendants argue Wylie crossed into the eastbound lane and struck Adams' truck. Plaintiff's only support is the expert testimony of Dr. Steven Kramer, a crash reconstructionist. Defendants moved to exclude Dr. Kramer's opinions as unreliable (Docs. 60 & 68); Plaintiff opposed (Docs. 62 & 71). This Court held a record *Daubert* hearing at which Dr. Kramer testified (Doc. 65). At the Hearing, Plaintiff stipulated that he cannot succeed on his negligence claim against Adams if this Court precludes Dr. Kramer's testimony (*id.* at 42:22–43:11; Doc. 73). For the following reasons, Defendants' Motion to preclude Dr. Kramer's testimony is granted.

2

Expert testimony is admissible under Federal Evidence Rule 702 only if the trial court finds that the testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). Under the Rule, this Court's inquiry is a "flexible one," focusing on "the principles and methodology [an expert uses], not on the conclusions that they generate." *Id.* at 595. This Court gauges reliability according to such factors as "(1) whether the theory or technique has been tested and subjected to peer review and publication, (2) whether the potential rate of error is known, and (3) its general acceptance." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). For opinion testimony to be "considered appropriately scientific, the expert need not testify to what is 'known to a certainty' but must only state 'an inference or assertion . . . derived by the scientific method.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 590). Plaintiff bears the burden of showing by a preponderance of the evidence that Dr. Kramer's testimony is admissible. *Daubert*, 509 U.S. at 579 & n.10.

In his first report, Dr. Kramer concludes that Adams was distracted at the time of the accident and crossed left of center. When Adams saw Wylie's oncoming vehicle, or shortly before, he attempted to re-enter the eastbound lane by turning to the right, causing his rear trailer to "fish tail" to the left and collide with Wylie (Doc. 60-1 at 5). In his second report, Dr. Kramer reverses course and concludes that because the angle of impact between Adams' trailer and Wylie's vehicle was very shallow, either vehicle could have crossed over center but he is "not convinced it was [Wylie's] pickup that crossed over center" (Doc. 60-2 at 2).

At the Hearing, Dr. Kramer could not identify any objective, reliable scientific evidence to support his opinion that Adams crossed left-over center. Dr. Kramer testified candidly that "[t]his is a case where you may have photographs, and you may have testimony and so forth and so on, but

3

from an engineering or scientific standpoint, it's not possible to calculate what I told you" (Doc. 65 at 19:25–20:3). Dr. Kramer did not perform any testing, modeling or animation to support his opinion, and did not offer any methodology underlying his opinion that could be subject to peer review or verification (*id.* at 14:15–19, 28:14–17; Doc. 60-3 at 92:22–93:8, 120:23–121:19, 147:16–148:6, 148:16–149:16). Despite being retained as an accident reconstructionist, Dr. Kramer did not reconstruct the accident based on the physical evidence (Doc. 60-3 at 77:14–81:15; Doc. 65 at 17:10–18:14). Admittedly, Dr. Kramer does not base his testimony on his specialized knowledge but on his real world "experience" (Doc. 68-3 at 147:22–149:16). Dr. Kramer's failure to "test [his] hypothesis in a timely and reliable manner or to validate [his] hypotheses by reference to generally accepted scientific principles as applied to the facts of the case renders [his] testimony . . . inadmissible." *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000); *see Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005) (affirming exclusion of expert's testimony and finding that expert's "failure to empirically test his theories . . . undermined the reliability of his testimony").

To the extent Dr. Kramer opined that Adams was distracted while driving, he has identified no qualification for that opinion, which does not concern matters outside the knowledge of the average juror. *See Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone knows [a particular fact], then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") (quoting Federal Evidence Rule 702).

For these reasons, Defendants' Motion to preclude Dr. Kramer's testimony is granted.

**Count II: Negligence as to Shoemaker.** "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path." *Neu v. Estate of Nussbaum*, 2015-Ohio-159, at ¶ 17 (Ohio Ct. App. 2015). A driver traveling within a statutorily defined right-of-

way has an absolute preference so long as the driver is driving lawfully. *See Morris v. Bloomgren*, 127 Ohio St. 147, 153–54 (1933). The undisputed evidence reflects Shoemaker had an absolute right to proceed in his right-of-way and that he was driving lawfully. The parties agree that at the time of the collision, Shoemaker was driving entirely within the eastbound lane and did not exceed the speed limit (Doc. 67 at ¶¶ 4–5). He did not receive any traffic citations as a result of the collision with Wylie (*id.* at ¶ 6). There is "no evidence whatsoever that any course of conduct reasonably available to [Shoemaker] could have prevented the accident in question." *Shinaver v. Szymanski*, 14 Ohio St.3d 51, 54 (1984).

Plaintiff claims Shoemaker caused the collision with Wylie by following too close to Adams and traveling at a speed too fast to stop within a reasonable distance, in violation of the Ohio assured clear distance rule. *See* O.R.C. 4511.21(A) ("No person shall operate a motor vehicle . . . at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead."). A driver violates the assured clear distance rule "if he collides with an object that (1) is ahead of him in his path of travel, (2) is stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) is reasonably discernible." *Neu*, 2015-Ohio-159, at ¶ 36 (quoting *Wilson v. Maple*, 2006-Ohio-3536, at ¶ 13 (Ohio Ct. App. 2006)). Plaintiff has not met at least two of the four evidentiary requirements to establish a violation. The parties agree that Wylie was not stationary at the time of the collision, was not moving in the same direction as Shoemaker, and that Wylie's vehicle appeared suddenly in Shoemaker's lane of travel (Doc. 67 at ¶¶ 9–10).

Even if Shoemaker had violated the assured clear distance rule, it is undisputed that immediately preceding the collision between Shoemaker and Wylie, Wylie crossed the center line into the eastbound lane (Doc. 67 at 8). In a negligence action, the "emergency doctrine" negates liability where "there was a sudden and unexpected occurrence of a transitory nature which demanded

5

immediate action without time for reflection or deliberation." *Hatala v. Craft*, 165 Ohio App. 3d 602, 607 (2006); *see also Cox v. Polster*, 174 Ohio St. 224, 226 (1963) ("The only defense which may be made to a violation of [the assured clear distance rule] is that such assured clear distance was suddenly cut down or lessened by the entrance into the driver's line of travel of some obstruction which rendered him unable, in the exercise of ordinary care, to avoid colliding with such obstruction.") When Wylie suddenly entered Shoemaker's right-of-way, Shoemaker was confronted with a sudden emergency that he did not create and that he did not have enough time to avoid (Doc. 67 at ¶ 11). Accordingly, Shoemaker cannot be found liable for the collision.

**Counts III, IV and V.** Plaintiff does not allege any independent allegations of negligence against FedEx, but has proceeded on an agency theory. The parties agree that Plaintiff's negligence claim against FedEx (Count III) and state law claims against all Defendants (Counts IV and V) fail if this Court grants summary judgment on Plaintiff's claims against Adams and Shoemaker (Doc. 73). Having found that Plaintiff cannot support his claims against Adams or Shoemaker, this Court grants summary judgment to Defendants on the remaining counts.

## CONCLUSION

Defendants' Motion to Preclude the Expert Testimony of Dr. Steven Kramer is granted (Doc. 60). Defendants' Motion for Summary Judgment as to all counts is granted (Doc. 70).

IT IS SO ORDERED.

                                              s/ *Jack Zouhary*
                                              JACK ZOUHARY
                                              U.S. DISTRICT JUDGE

July 30, 2015